CATLETT, APPELLEE, *v.*
CATLETT, N.K.A. MILLER,
APPELLANT.

(No. CA87-12-095—Decided
August 1, 1988.)

*Stephanie Wyler Linder,* for appellee.
*Bruce A. Favret,* for appellant.

JONES, P.J. Appellant, Judy Miller (f.k.a. Catlett), appeals an order of the Clermont County Court of Common Pleas, Domestic Relations Division, requiring her to place in trust $7,000 in

Social Security benefits she received as representative payee for the benefit of her minor daughter, Lori.

The case at bar originated with the August 15, 1978 divorce of appellant and her husband, appellee, William Catlett, Jr. The decree awarded custody of Lori, the couple's only child, to appellant and ordered appellee to pay $20 per week as child support. At all times pertinent to the case at bar, appellee has satisfied the support obligation. Shortly after the divorce, appellee became totally disabled and began receiving disability payments from both the Social Security Administration ("SSA") and Veterans Administration. Because of her father's disability, Lori also became eligible for social security benefits and began receiving between $200 and $230 per month from SSA. The payments were made to appellant as Lori's representative payee.

After a few years, both appellee's and Lori's benefits were abated when the government challenged appellee's disability. Appellee's benefits were eventually restored; he did not, however, seek an immediate reinstatement of Lori's benefits since his disability status was still uncertain and he did not want to risk having to reimburse the government for his daughter's benefits if she was later ruled ineligible for benefits. Ultimately, appellee's disability was confirmed and Lori's benefits were reinstated. In 1986, appellant received a check for approximately $18,000 representing six years of back benefits.

On December 22, 1986, appellee filed a motion with the domestic relations court requesting a termination of the weekly child support payments. Appellee also requested that the lump-sum Social Security benefits paid to appellant on Lori's behalf be placed in trust for the child's maintenance and education. The motion was heard on April 13, 1987. Appellant testified that she had remarried and had had two children by her second husband. Appellant also claimed that the weekly $20 support payments were insufficient to adequately support Lori and that her husband had been supporting the child during the six years she was not receiving Social Security benefits. The evidence further revealed that appellant and her husband had used approximately $11,000 of the benefits to remodel the kitchen in their home and to purchase Christmas gifts for the entire family. The balance of the benefits was placed in a mutual fund.

The trial court denied appellee's request to terminate the weekly child support payments. The court did, however, order appellant to place the balance of the lump-sum Social Security benefits in a trust for the benefit of Lori, to be paid to her when she graduated from high school or attained the age of eighteen, whichever occurred later.

Appellant appeals the trial court's order requiring the establishment of the trust and presents the following two assignments of error:

"First Assignment of Error

"The trial court erred to the prejudice of the appellant in exercising jurisdiction over federal Social Security money paid directly to a representative payee."

"Second Assignment of Error

"The trial court abused its discretion in ordering that the $7,000.00 be placed in trust."

As to the first assignment of error, appellant alleges that the Clermont County Court of Common Pleas, Domestic Relations Division has no jurisdiction over Social Security benefits paid to a representative payee of a minor child. Appellant points out that she received the funds pursuant to

federal law in her appointed capacity as representative payee and that her only accountability is to the federal government through the SSA. In her capacity as representative payee, she is charged by SSA with the management and application of the funds for the benefit of the beneficiary and a state court is without jurisdiction to determine how such benefits are to be managed or applied.

The case at bar involves a dispute centered around the expenditure of federal Social Security benefits. Since appellee was disabled, his daughter became entitled to receive children's benefits. We must determine whether a state court has jurisdiction over these funds, insofar as they are expended and used for the child's benefit and maintenance. Initially, a basic premise regarding jurisdiction is that nothing in the concept of the federal system prevents state courts from enforcing rights created by federal law. *Charles Dowd Box Co.* v. *Courtney* (1962), 368 U.S. 502. Concurrent jurisdiction has been a common phenomenon and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule. *Id.* Generally, state courts can exercise concurrent jurisdiction with federal courts in cases arising under the laws of the United States "where it is not excluded by express provision, or by incompatibility in its exercise arising from the nature of the particular case." *Claflin* v. *Houseman* (1876), 93 U.S. 130, 136. Thus, unless Congress gives the federal courts exclusive jurisdiction, state courts have both the power and duty to enforce obligations arising under federal law. *Society Natl. Bank* v. *Kienzle* (1983), 11 Ohio App. 3d 178, 11 OBR 271, 463 N.E. 2d 1261.

The dependent child of an individual entitled to disability benefits shall be entitled to a child's insurance benefit. Section 402(d), Title 42, U.S. Code; *Fuller* v. *Fuller* (1976), 49 Ohio App. 2d 223, 3 O.O. 3d 273, 360 N.E. 2d 357. In the case at bar, such payments were made to appellant as the representative payee. Section 405(j), Title 42, U.S. Code. Payments are made to a representative payee when the SSA determines that the child's interest would be best served "by representative payment rather than direct payment of benefits," Section 404.2001(a), Title 20, C.F.R., and where the child is under the age of eighteen. Section 404.2010(b), Title 20, C.F.R.

Under Section 405(i), Title 42, U.S. Code, upon a final decision of the Secretary of Health and Human Services or upon final judgment of any court of competent jurisdiction that any person is entitled to benefits, the secretary shall certify to the "Managing Trustee" (Secretary of the Treasury) all information relative to the amounts and time of payments and the name and address of the individual to whom payment is to be made. The Managing Trustee shall then make payment according to the secretary's certification. Once payment is made, such constitutes "a complete settlement and satisfaction of any claim, right, or interest in and to such payment." Section 405(k), Title 42, U.S. Code. The federal regulations further provide that in regard to the misuse of benefit payments by a representative payee:

"Our obligation to the beneficiary is completely discharged when we make a correct payment to a representative payee on behalf of the beneficiary. The payee in his or her personal capacity, and not SSA, may be liable if the payee misuses the beneficiary's benefits." Section 404.2041, Title 20, C.F.R.

Although Section 404.2065, Title 20, C.F.R., requires the representative

payee to make an accounting for the use of the benefits, in the event a representative payee fails to use the benefits on behalf of the beneficiary in accordance with department guidelines, the SSA will simply select a new representative payee to receive future payments. Section 404.2050, Title 20, C.F.R.

Under the provisions of Section 405(a)(1), Title 42, U.S. Code, the secretary is "directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter," and is granted the authority to make rules and regulations and establish procedures necessary or appropriate to carry out such duties. Sections 405(a) and (b), Title 42, U.S. Code. To that extent, regulations were promulgated (Section 404.900 *et seq.,* Title 20, C.F.R.) providing for two basic types of administrative action: "initial determinations" and those that are not initial determinations. With respect to initial determinations, an applicant is entitled to reconsideration and a hearing, and to have such determinations subjected to an administrative appeal and to judicial review in the federal courts. See Sections 404.900, 404.901, 404.907, 404.929, 404.930, 404.967 *et seq.,* Title 20, C.F.R.; Section 405(g), Title 42, U.S. Code. Those actions which are not initial determinations may be reviewed by the SSA but are not subject to reconsideration at a formal hearing, to administrative appeal, or to judicial review. See Section 404.903, Title 20, C.F.R. Administrative actions that are initial determinations and those that are not initial determinations are listed in Sections 404.902 and 404.903, Title 20, C.F.R., respectively. These determinations are ultimately subject to judicial review as provided for in Section 405(g), Title 42, U.S. Code. That sec-

tion provides, in part, that: "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, * * * may obtain a review of such decision by a civil action * * *. Such action *shall be brought* in the *district court* of the *United States* * * *.*" (Emphasis added.)

As the New York Supreme Court, Appellate Division, observed:

"* * * The essence of this plan is that questions which are properly the subject of administrative action by the Social Security Administration are either relegated entirely to its discretion so long as made in accordance with the dictates of applicable statutes and regulations or, if made after a hearing, are subject to judicial review only in the Federal courts pursuant to subdivision (g) of section 405 of title 42 of the United States Code." *In re Kummer* (1983), 93 App. Div. 2d 135, 152, 461 N.Y. Supp. 2d 845, 856.

In *Kummer, supra,* the Appellate Division reviewed a surrogate court's decision which addressed, among other things, the issue of whether the Westchester County Department of Social Services, as the representative payee for two minor children, had improperly expended Social Security benefits it received in its capacity as representative payee. It was argued that if the representative payee had misapplied the funds, the beneficiaries should seek to have the SSA issue an administrative directive for the representative payee to refund those sums improperly applied, which directive is reviewable only in federal courts pursuant to Section 405(g), Title 42, U.S. Code.

The *Kummer* court reviewed the applicable code and regulations sections mentioned above. After distinguishing the cases cited in support of the proposition that the surrogate court did not have jurisdiction,[1] the

[1] In *Allan Dee-Wayne Residential Ctr.* v. *Michigan Dept. of Social Services* (1978),

80 Mich. App. 137, 263 N.W. 2d 315, the Michigan Court of Appeals held that state

Appellate Division noted that federal officials were not parties and none of their acts had been called into question. "Rather, it is the acts of the representative payee which have been questioned." *Kummer, supra,* at 155, 461 N.Y. Supp. 2d at 858. The case did not involve a dispute over basic questions concerning a beneficiary's eligibility, amounts of benefits, or the appointment of a representative payee, but dealt with the representative payee's account, that is, with the propriety of his expenditures of benefits. *Id.*

Appellant submits that a representative payee is required to make an accounting to the SSA for the expenditures of benefits. Accordingly, the representative payee is accountable to SSA through the federal courts. However, the SSA's review of the accounting reports required by the regulations "* * * is solely to determine whether to continue making future payments to the named representative payee. The administration is not authorized either by statute or regulation to determine disputes between the beneficiary and the representative payee as to the propriety of the expenditure of benefits by the latter. Since there is no claim in this case that the administration improperly paid the benefits to the DSS as representative payee, those payments constituted a complete satisfaction of the Government's obligation with respect thereto (US Code, Tit 42, § 405, subd [k]). Such being the case,

the Federal Government has no interest in the funds properly paid to the DSS and it has no power to inquire into their expenditure other than to ascertain whether to make future payments to the DSS as representative payee. It lacks the power to determine disputes between the representative payee and the beneficiary as to the propriety of expenditures of benefits held in trust by the former because it has no interest in those funds." (Footnotes omitted.) *Kummer, supra,* at 159, 461 N.Y. Supp. 2d at 860.

We find that the case at bar involves an issue, *i.e.,* the representative payee's expenditure of benefits, which is neither an initial determination nor a determination which is not an initial determination as defined by the federal regulations. Jurisdiction over this particular issue has not been exclusively granted to the federal courts by express provision. In addition, the nature of this particular question is such that the SSA no longer has any interest in the funds after they have been properly paid to the appropriate representative payee. Accordingly, we find that the Clermont County Court of Common Pleas, Domestic Relations Division, is not precluded from exercising jurisdiction in the case at bar. The first assignment of error is therefore overruled.

Having determined that the trial court had jurisdiction in the matter *sub judice,* we now turn to the second assignment of error which claims that the court abused its discretion in order-

---

courts had no jurisdiction to hear cases involving Social Security benefit rate disputes upon the ground that Section 405(g), Title 42, U.S. Code, required such disputes to be heard in federal courts, thus depriving state courts of concurrent jurisdiction. The New York Supreme Court, Appellate Division, distinguished the *Allan* decision since it involved a rate dispute brought to ultimately review an initial

determination of the SSA concerning the proper amount of payments.

Clearly, the amount of benefit payments to be made is an initial determination subject to administrative action by the SSA, Section 404.902(c), Title 20, C.F.R., and is subject to exclusive judicial review by the federal courts pursuant to Section 405(g), Title 42, U.S. Code.

ing the balance of the benefits to be placed in trust. Appellant refers to the Social Security benefits as "past due or back child support." During the six years Lori was not receiving benefits, appellant's husband was, according to her argument, required to support the child since the $20 support payments appellee paid each week were inadequate to support Lori. Since the benefits constitute past-due child support and since appellant was entitled to receive this support, she argues that the trial court cannot dictate how appellant may spend these funds or otherwise limit their use.

Under Ohio law, both parents are equally obligated to provide the care, nurture, welfare and education required for their minor children. *Boltz* v. *Boltz* (1986), 31 Ohio App. 3d 214, 31 OBR 484, 509 N.E. 2d 1274. In a divorce proceeding, a domestic relations court may order either or both parents to support or help support their children. R.C. 3109.05(A). A determination of the amount of support requires a determination of the monetary amount necessary to support the child in the standard of living he or she would have enjoyed had the marriage continued, followed by an equitable division of support between the parents in an amount as is reasonable under all attendant circumstances, including a consideration of the financial needs and resources of both parents. *Cheek* v. *Cheek* (1982), 2 Ohio App. 3d 86, 2 OBR 95, 440 N.E. 2d 831. If the current needs of the child are greater than at the time of the original order thereby indicating that the original support order is inadequate to meet the child's current needs, then a party may petition the domestic relations court to increase the existing support order. See, *e.g., Bright* v. *Collins* (1982), 2 Ohio App. 3d 421, 2 OBR 514, 442 N.E. 2d 822. If, as argued by appellant, the weekly support payments of $20 are inadequate,

then we cannot understand why, during the six years Lori was not receiving Social Security benefits, appellant never moved for an increase in support.

"Social [S]ecurity payments are a substitute for the disabled parent's earnings and are not gratuities from the federal government." *Pride* v. *Nolan* (1987), 31 Ohio App. 3d 261, 263, 31 OBR 546, 548, 511 N.E. 2d 408, 411. The purpose of children's Social Security benefits is to provide support for a minor child when the parent is disabled. *Gilford* v. *Wurster* (1983), 24 Ohio App. 3d 77, 24 OBR 145, 493 N.E. 2d 258. The payments are in lieu of the parent's wages from which the child would have derived some benefit had the parent been working and not disabled. The child receives such payment by virtue of his or her relationship to the disabled parent. In the case at bar, the Social Security benefits were actually a windfall to appellant. Were it not for appellee's disability, appellant would have only received the weekly support payments of $20 as required by the divorce decree. Instead, because of the the disability, appellant received both the support payments and the Social Security benefits on behalf of Lori.

Appellant received the benefits as Lori's representative payee. In this capacity, she is required to apply the benefits towards the child's current maintenance. *Fuller, supra;* Section 404.2040(a), Title 20, C.F.R. Current maintenance includes the costs of obtaining food, shelter, clothing, medical care and personal comfort items. *Id.* If payments are not needed for the beneficiary's current maintenance or reasonably foreseeable needs, they shall be conserved or invested on behalf of the beneficiary. Section 404.2045(a), Title 20, C.F.R.

We find no abuse of discretion by the trial court in placing the funds into a trust account for Lori's benefit. The

very nature of the benefits requires that the benefits be used exclusively for Lori's benefit and maintenance and not for any other member of appellant's household to whom appellee owes no obligation. We do, however, question the restriction which the court placed on the funds prohibiting their use before Lori's eighteenth birthday or her graduation from high school. First and foremost, the regulations require that benefits be used for the beneficiary's *current* maintenance. Section 404.2040(a), Title 20, C.F.R. To place the funds in trust for this extended period of time would defeat the very purpose of the benefits. We feel that the trust order should be modified so that upon proper application and demonstration to the domestic relations court, that court may order a disbursement of portions of the trust funds to appellant when necessary to provide Lori, and Lori alone, with the essentials of current maintenance, provided, however, that current child support payments and any Social Security benefits hereafter received by appellant as representative payee or received by another individual and applied towards Lori's maintenance are insufficient to meet the child's needs.

Based on the foregoing modification, we find no abuse of discretion and overrule the second assignment of error.

*Judgment affirmed
as modified herein.*

HENDRICKSON and YOUNG, JJ., concur.